# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Allan J. Hamilton, M.D., | No. CV 06-417 TUC- DCB (JM) |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION** |
| Hartford Life and Accident Insurance Company, University Physicians, Inc. Benefit Plan and University Physicians, Inc., an Arizona corporation, | |
| Defendants. | |

Plaintiff has moved pursuant to 28 U.S.C. § 1447(c) for remand of this action to State Court. For the reasons set forth below, the Magistrate Judge recommends that the District Court, after its independent review, deny Plaintiff's motion.

**I.     Introduction**

Plaintiff Allan Hamilton, M.D., originally filed this action in the Pima County Superior Court. On August 10, 2006, Defendant Hartford Life and Accident removed the action to this court alleging that Dr. Hamilton's policy is governed by ERISA, and therefore there was federal question jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). *Notice of Removal*, Docket No. 1. On October 27, 2006, Dr. Hamilton filed the pending Motion to Remand to State Court, alleging that the policy in question is a "governmental plan" and therefore exempt from ERISA. *Motion to Remand*, Docket No. 23. On April 19,

2007, the Court conducted a hearing on the motion and subsequently allowed Dr. Hamilton to file supplemental briefing on May 3, 2007.

## II.  Background Facts

From August 1, 1990 through June 10, 2005, Plaintiff Allan Hamilton, M.D., a neurosurgeon, was employed by the University of Arizona ("University") and by University Physicians, Inc., now known as University Physicians Healthcare, Inc. ("UPH"). In April 2004, Dr. Hamilton applied for disability insurance benefits under a group insurance policy issued by Defendant Hartford Life & Accident Insurance Co. ("Hartford") to UPH. Dr. Hamilton's claims for both total and residual disability benefits were denied and after administratively appealing the decision, he filed the instant action.

## III.  Motion for Remand Standard

Federal Courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994). Therefore, they have only the power to hear cases that they have been authorized to hear by the Constitution and the United States Congress. *Id.*. at 377. Because federal jurisdiction is limited, it is the removing defendant's burden under the removal statute, 28 U.S.C. § 1441, to establish grounds for federal jurisdiction in the case.

## IV.  Discussion

### A.  ERISA Preemption

The removal of an action to federal court is proper only if the action originally could have been brought in federal court. *See* 28 U.S.C. § 1441(a). Because there is no basis for diversity jurisdiction in this case, whether defendants properly removed this action turns on the existence of a federal question, that is, whether Dr. Hamilton's claims arise under the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 1331. Typically, in determining whether a federal question exists, district courts are instructed to look to the face of the plaintiff's complaint, rather than to the defenses asserted by the defendants. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). However, special rules govern removal jurisdiction of claims arising under ERISA. *Kemp v. International Business*

1 *Machines Corp.*, 109 F.3d 708, 712 (11th Cir. 1997).  The "super preemption" provision of
2 ERISA, 29 § U.S.C. § 1144(a), was intended to clear away *all* state laws bearing on
3 employee retirement plans, even those consistent with ERISA's substantive requirements.
4 The purpose is to assure nationally uniform administration of such plans.  *Pilot Life Ins. Co.*
5 *v. Dedeaux*, 481 U.S. 41, 46 (1987).

6 However, even if a plan qualifies as an employee benefit plan under ERISA, the plan
7 can nevertheless fall outside ERISA's broad coverage if it is statutorily exempt.  *See* 29
8 U.S.C. § 1003(b).  ERISA specifically exempts five categories of employee benefit plans:
9 (1) governmental plans; (2) church plans; (3) plans established solely for complying with
10 workers' or unemployment compensation or disability insurance laws; (4) plans maintained
11 outside the United States primarily for nonresident aliens; and (5) unfunded excess benefits
12 plans.  29 U.S.C. § 1003(b)(1)-(5).  Here, Dr. Hamilton claims that the Court lacks subject
13 matter jurisdiction because the plan at issue is "governmental plans," which is outside the
14 scope of ERISA. *See* 29 U.S.C. § 1003(b)(1) ("The provisions of this subchapter shall not
15 apply to any employee benefit plan if . . . such plan is a governmental plan (as defined in
16 section 1002(32) of this title).").

17 **B.    Governmental Plan Exemption**

18 A "governmental plan" is defined as follows: "A plan established or maintained for
19 its employees by the Government of the United States, by the government of any State or
20 political subdivision thereof, *or by any agency or instrumentality of any of the foregoing* .
21 . . ."  29 U.S.C. § 1002(32) (emphasis added).  Here, the characterization of the plan at issue
22 is muddied by the relationship between the University and UPH.  According to Dr. Hamilton,
23 the plan at issue here was maintained by UPH for the benefit of employees of the University.
24 The only issue, then, is whether the UPH is properly defined as an "agency or
25 instrumentality" of the University and, therefore, the State of Arizona.

26 In crafting their arguments on this issue, both the Plaintiff and Defendants cite and
27 rely on the two factors described in *Shannon v. Shannon*, 965 F.2d 542 (7th Cir. 1992).

28

1  There, the Seventh Circuit prescribed a two prong test, requiring only one prong to be
2  satisfied to support a finding that a plan falls within the definition of a governmental plan.
3  Under the test, an entity is a political subdivision if it is "*either* (1) created directly by the
4  state, so as to constitute departments or administrative arms of the government, *or* (2)
5  administered by individuals who are responsible to public officials or to the general
6  electorate." *Id.* at 548, *quoting NLRB v. Natural Gas Utility District of Hawkins County,*
7  *Tennessee*, 402 U.S. 600, 604-05 (1971). *See also Kendall v. Standard Ins. Co.*, 17
8  F.Supp.2d 1128, 1132 (E.D. Cal. 1998).

### 1. Evidence That UPH *Is* an Agency or Instrumentality

Dr. Hamilton argues that he was an employee of the University and that UPH was fully controlled by the University. In support of his position, he offers his practice agreement ("Member Agreement") with UPH, which provided that he receive compensation for service and as a tenure-eligible assistant professor of surgery at the University providing clinical services under the UPH faculty group practice. *Plaintiff's Exhibit 1*. He also notes that, at the time he entered into the Member Agreement, he requested that a restrictive covenant be stricken from the agreement, and that request was approved by the Acting Head of the Department of Surgery for the University's Medical Center. *Plaintiff's Exhibit 2*. He also noted that the Member Agreement was contingent on approval of the University. *Plaintiff's Exhibit 1*.

Dr. Hamilton next points to the fact that his subsequent reappointment notices ("Notices") confirmed that he was "subject to the Arizona Board of Regents (ABOR) Conditions of Service as indicated in the 'Conditions of Service.' *Plaintiff's Exhibit 3*, at 60. The Conditions of Service column indicated that Dr. Hamilton was "administrative" and "faculty." *Id.* Dr. Hamilton also cites instances where UPH has represented itself as a state agency and stated that employment by UPH was "a mandatory component of [having] a position of the faculty of the University of Arizona Medical School." *Plaintiff's Exhibit 13*.

- 4 -

The University also issued Dr. Hamilton's W-2 statements. *Plaintiff's Exhibit 7*. His position had been advertised on the University's website. *Plaintiff's Exhibit 10*. The Arizona Board of Regents must approve all physician members of UPH. *Plaintiff's Exhibit 3*. The amount of compensation to UPH employees, who also must be employees of the University, must be approved by the University's Dean of the College of Medicine. *Id.* The ABOR gave property to UPH and the ABOR has access to UPH's financial records. Finally, the principle purpose of UPH is to support the College of Medicine and the University. If it fails in this purpose, all of its real and personal property is to be conveyed by UPH to the ABOR.

### 2. Evidence That UPH *Is Not* an Agency or Instrumentality

In response, the Defendants assert that Dr. Hamilton had two employers, the University and UPH. They contend that the Plan was established, funded and maintained by UPH and that Dr. Hamilton's employment by the University is irrelevant. *Hartford's Exhibit A*. They point out that UPH is named in the policy as the employer and is obligated to pay the premiums. The beneficiaries of the policy are employees of UPH (although all are also employed by the University). In fact, UPH contends, the University has no involvement with the Plan in question and is not even mentioned. *UPH Exhibit B*.

Defendants UPH and University Physicians Benefit Plan (collectively "UPH") support the idea that, in relation to the Plan in question, Dr. Hamilton was employed by UPH by directing the Court's attention to the Medical Service Plan of 1985 (the "MSP") that created the relationship between UPH and the University. *UPH Exhibit A*. The MSP is a contractual agreement whereunder UPH agreed to staff University Medical Center. *Id.* The MSP states that UPH's members "are both employees of the [University] in their teaching and research capacities and employees of UPH in their delivery of health care, in which latter capacity they are employees of the [University] only in their teaching and research capacities."

Defendant Hartford notes that UPH was formed as a private, nonprofit corporation, and not by statute or authority of the Arizona Board of Regents, and does not have

- 5 -

governmental powers such as taxation or eminent domain. *Hartford Exhibit A*. It's control and supervision is conducted by a board of directors, none of whom are appointed by any government official or entity. UPH's budget is prepared internally and approved by the board and the University Board of Regents have no role in the process. *Id.* UPH physicians are paid by the University, but their salaries are covered by funds paid to the University (which issues W-2s) by UPH.

### C. Analysis

In applying the framework described in *Shannon*, "the courts examine the manner in which the entity was formed, to how it reports, who has ultimate control of the entity, how the entity's employees are paid and whether they are entitled to the projections afforded other governmental employees." *McMurty v. Aetna Life Ins. Co.*, 2006 WL 2640627 (W.D. Okla. 2006). Although it is a close call, the application of these factors compel a finding that UPH is not a governmental entity.

UPH is an independently funded non-profit corporation and does not receive state money. It is managed by its own board of directors and not by the ABOR. The role of its employees, providing medical treatment, is not traditionally a governmental function and these services are not being rendered on behalf of a governmental entity. UPH is dominated by the private interests of its members, rather than public interest of the University, and although there is a great deal of overlap, UPH and its finances are not controlled by the University. UPH was not created by statute and its financial records, although subject to inspection by the University, are not subject to public inspection.

These considerations lead the Court to conclude that the plan was not maintained by UPH for the benefit of employees of the University. Thus, the plan is not exempted from ERISA by the governmental plan exception. Dr. Hamilton's claims are therefore governed by ERISA and are not subject to remand.

### V. Recommendation

- 6 -

Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the District Court, after its independent review, issue an Order **denying** Plaintiff's Motion to Remand to State Court [Docket No. 23].

The parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties have ten (10) days within which to file a response to the objections. If any objections are filed, this action should be designated case number: **CV 06-417 TUC-DCB**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia* 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

DATED this 8th day of June, 2007.

*[signature]*
Jacqueline Marshall
United States Magistrate Judge

- 7 -